UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2006 MAR 13 AM 8 53

CLERK
BY
DEPUTY CLERK

| | |
|---|---|
| MICROBRIGHTFIELD, INC., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 2:05-CV-207 |
| ) | |
| PEERLESS INSURANCE COMPANY, ) | |
| Defendant. ) | |

## MICROBRIGHTFIELD, INC.'S OPPOSITION TO PEERLESS'S MOTION FOR SUMMARY JUDGMENT

Peerless Insurance Company ("Peerless") has moved for summary judgment as a matter of law in its favor on its declaratory judgment counterclaim. However, Peerless's motion fails to address squarely Microbrightfield's ("MBF") argument as thoroughly raised in MBF's notice letter to Peerless. Namely, that MBF was entitled to a defense against the Bacus patent infringement suit because that suit alleged an invasion of Bacus's privacy. Because the Bacus claims were not excluded from the policy issued by Peerless, and because a colorable argument was made for coverage within the language of the policy, Peerless is not entitled to summary judgment on its declaratory judgment counterclaim.

A. **Peerless Has Erected "Straw Men" Arguments Which It Summarily Immolates.**

Peerless's Memorandum of Law Part III(c) describes in great detail how Bacus's claim against Microbrightfield was not covered under Sections V.14(f) and (g) of the 2001 Peerless policy. See Peerless's Motion for Summary Judgment pp. 12-19. Yet, as Microbrightfield advised Peerless by notice letter, Microbrightfield seeks coverage under Section V.14(e) of the 2001 policy, not under V.14(f) and (g). Thus, Peerless's arguments in these veins are inapposite and are irrelevant to the court's disposition of the claims before it.

DOWNS
RACHLIN
MARTIN PLLC

Similarly, in its Memorandum of Law Part III(a), Peerless seeks to bolster its position with a facially impressive string of citations. Careful review of these decisions, however, bears out that each of these decisions suffers from one or more of the following shortcomings: (1) The decision does not involve any underlying claim of patent infringement; (2) The decision does involve at least one underlying claim of patent infringement, but does not turn on that claim; (3) The decision involves underlying patent infringement, but the court analyzed coverage under "Advertising Injury" rather than "Personal Injury" rubrics[1]; or (4) The decision involves a claim for patent infringement, and is analyzed under the "Personal Injury" language of the insured's policy, but is not reviewed under the "invasion of a right of privacy" standard asserted at this time by Microbrightfield. In short, *none* of the cases cited by Peerless are on point with the issues of law now before this court.

---

[1] Peerless cites U.S. Fidelity & Guar. Co. v. Frosty Bites, Inc., 232 F.Supp.2d 101 (S.D.N.Y. 2002) for the proposition that there is a general "trend" in this country "to deny coverage to insureds seeking to recover from their insurers for patent infringement." The Frosty Bites decision's next sentence, however, points out that "arguments in support of coverage in [these] other actions rely on the advertising injury section of the commercial general policy." Id. at 104. Indeed, two other cases cited by Peerless, Transcontinental Ins. Co. v. Jim Black & Associates, Inc., 888 So.2d 671 (Fla. Dist. Ct. App. 2004), and Heritage Mut. Ins. Co. v. Adv. Polymer Tech., Inc., 97 F.Supp.2d 913 (S.D.Ind. 2000), similarly address "advertising injury" arguments and so are not material to the argument now before this Court. Microbrightfield does not premise its claim for coverage on an "advertising injury" argument, but rather on "personal injury" grounds.

Peerless also omits crucial language in its citation to Julian v. Liberty Mut. Ins. Co., 682 A.2d 611, 613-614 (Conn.App.Ct. 1996). Again, at face value, Peerless's citation would appear impressive. Yet, it neglects to disclose that the quoted excerpt is *preceded* by this statement: "In most of the cases that have construed the phrase 'infringement of copyright, title or slogan' in policy provisions defining advertising injury, however, the courts have concluded that 'title' does not include the right of ownership of property embodied in a patent." Id. The citation is wholly irrelevant. Microbrightfield has not pursued coverage under an "advertising injury" schema, nor within that realm does it point to insurance coverage under a "title" theory.

Similarly, in its Memorandum of Law Part III(a), Peerless seeks to bolster its position with a facially impressive string of citations. Careful review of these decisions, however, bears out that each of these decisions suffers from one or more of the following shortcomings: (1) The decision does not involve any underlying claim of patent infringement; (2) The decision does involve at least one underlying claim of patent infringement, but does not turn on that claim; (3) The decision involves underlying patent infringement, but the court analyzed coverage under "Advertising Injury" rather than "Personal Injury" rubrics[1]; or (4) The decision involves a claim for patent infringement, and is analyzed under the "Personal Injury" language of the insured's policy, but is not reviewed under the "invasion of a right of privacy" standard asserted at this time by Microbrightfield. In short, *none* of the cases cited by Peerless are on point with the issues of law now before this court.

---

[1] Peerless cites U.S. Fidelity & Guar. Co. v. Frosty Bites, Inc., 232 F.Supp.2d 101 (S.D.N.Y. 2002) for the proposition that there is a general "trend" in this country "to deny coverage to insureds seeking to recover from their insurers for patent infringement." The Frosty Bites decision's next sentence, however, points out that "arguments in support of coverage in [these] other actions rely on the advertising injury section of the commercial general policy." Id. at 104. Indeed, two other cases cited by Peerless, Transcontinental Ins. Co. v. Jim Black & Associates, Inc., 888 So.2d 671 (Fla. Dist. Ct. App. 2004), and Heritage Mut. Ins. Co. v. Adv. Polymer Tech., Inc., 97 F.Supp.2d 913 (S.D.Ind. 2000), similarly address "advertising injury" arguments and so are not material to the argument now before this Court. Microbrightfield does not premise its claim for coverage on an "advertising injury" argument, but rather on "personal injury" grounds.

Peerless also omits crucial language in its citation to Julian v. Liberty Mut. Ins. Co., 682 A.2d 611, 613-614 (Conn.App.Ct. 1996). Again, at face value, Peerless's citation would appear impressive. Yet, it neglects to disclose that the quoted excerpt is *preceded* by this statement: "In most of the cases that have construed the phrase 'infringement of copyright, title or slogan' in policy provisions defining advertising injury, however, the courts have concluded that 'title' does not include the right of ownership of property embodied in a patent." Id. The citation is wholly irrelevant. Microbrightfield has not pursued coverage under an "advertising injury" schema, nor within that realm does it point to insurance coverage under a "title" theory.

### B. Microbrightfield Was Entitled To Coverage Under The 2001 Policy Given Vermont's Liberal Interpretation Of Insurance Policies In Favor Of Insureds.[2]

#### a. The titles of the claims specified in Bacus's Complaint are not pertinent to Peerless's duty to defend.

In Peerless' Memorandum of Law Part III(a), Peerless argues that "the allegations [by Bacus] set forth a *prima facie* case of patent infringement. . . . This claim for patent infringement is not included in the enumerated offenses [in the Peerless insurance policies]. A comparison of the underlying Bacus complaint to this section of offenses fails to reveal any coverage for claims of patent infringement." Peerless's attempted diversion from the Vermont standard of law in determining coverage may give this Court some insight into the rudimentary coverage analysis performed by Peerless throughout this case.

In Vermont, a claim's label is not determinative on the issue of insurance coverage. Cooperative Fire Ins. Ass'n of Vermont v. Bizon, 166 Vt. 326, 335 (1997). Instead of the inquiry being decided on the basis of the words used in the title of the claim, Vermont courts look to the damages sought and the actions giving rise to those damages. Garneau v. Curtis & Bedell, Inc., 158 Vt. 363, 368 (1992). "An insurer's duty to defend is normally measured by comparing the terms of its policy with the underlying allegations in the complaint against its insured. While resolution of this question is generally made on the language of the policy and the language of the complaint, we have also looked to the known facts underlying a plaintiff's complaint to understand the application of policy provisions or exclusions." Allstate Ins. Co. v. Vose, 869 A.2d 97 (Vt. 2004). This rule of law serves to protect insurer and insured alike, for if the title of the claim alone were determinative, insurers would find themselves repeatedly the

---

[2] Both parties agree that Vermont law applies to determine insurance coverage in this case.



victims of injured persons who phrased their claims in terms they knew would be covered under the Peerless's insurance policy. See Nationwide Mut. Fire Ins. Co. v. Lajoie, 163 Vt. 619, 620 (1995). The labels of Bacus's claims therefore do not and should not have ended the inquiry for Peerless. Further study of the Bacus complaint reveals Peerless's duty to defend Microbrightfield, which it breached.

### b. The Bacus complaint contains allegations of acts rising to the level of "invasion of privacy."

The 2001 insurance policy issued to Microbrightfield by Peerless states: "We [Peerless] will have the right and duty to defend the insured against any suit seeking [damages because of "personal and advertising injury" to which this insurance applies." 2001 Insurance Policy III.B.1.a. "Personal and advertising injury," in turn, "means injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . Oral or written publication of material that violates a person's right of privacy." 2001 Insurance Policy V.14.e. The essence of the Bacus allegations is that Microbrightfield interfered with Bacus's private property patent right.

However, in its Motion for Summary Judgment, Peerless seeks to define "invasion of privacy" in its legal sense and cites to hornbook law. See Peerless Motion for Summary Judgment, p. 9. The legal definition of insurance terms is not controlling in Vermont, for as Peerless admits in the next paragraph, insurance contracts in dispute are given their "plain, ordinary and popular meaning." Northern Sec. Ins. Co. v. Perron, 172 Vt. 204, 210-211 (2001). See also Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc., 401 F.3d 876, 882 (8th Cir. 2005) (court rejects "technical and restricted legal definitions "to support insurance company's position that violation of Telephone Consumer Protection Act are not "invasions of

privacy."). The plain meaning of language *to an insured* can be defined by commonly used dictionaries and such definitions as are regularly used by courts to interpret the meaning of insurance policies. See Simpson v. State Mut. Life Assurance Co., 135 Vt. 554, 556, 1382 A.2d 198, 200 (1977) ("It is settled law that in the interpretation of insurance contract, when a pivotal word is not defined either in the policy or the application it is permissible for the court to take judicial notice of its meaning as given in standard works, such as dictionaries." (citations omitted)); see also In re Agency of Administration, 141 Vt. 68, 80-81, 444 A.2d 1349, 1355 (1982)(in construing legal language, the starting point must be with the plain meaning of the words in question, as defined by Webster's Dictionary). Thus, the starting point of the analysis should be with a *dictionary* (as would be readily available to the insured), *not* with hornbook law within the limited sphere of the legal profession.

As to dictionary definitions, Microbrightfield will hold Peerless to its own lexicographic admissions. Peerless, citing to Webster's New Collegiate Dictionary, agrees that "privacy" is understood to mean "freedom from unauthorized intrusion." See Merriam Webster's Collegiate Dictionary (10th Ed.). However, this definition only begs the question: What is intrusion? As noted in Microbrightfield's Motion for Summary Judgment, "intrusion" is the act of wrongfully "seizing, or taking possession of the property of another." Merriam Webster's Collegiate Dictionary (10th Ed.). The property here was the *intellectual property* of Bacus in the form of its patents which Microbrightfield allegedly infringed. See Florida Prepaid Postsec. Educ. Expense Bd v. College Sav. Bank, 527 U.S. 627, 642 (1999)("Patents, however, have long been considered a species of property"). Thus, by allegedly infringing the Bacus patents, Microbrightfield had wrongfully seized Bacus's property. This interpretation is reasonably implicit in the terms of the insurance contract given the plain meaning of the words used by

Peerless and its failure to define them.  See e.g., Universal Underwriters v. Lou Fusz, 401 F.3d 876, 881 (insurance policy that does not define "invasion of rights of privacy" held to include coverage for claims of unrestricted telemarketing")

The Bacus complaint also plainly alleges oral or written publication of the alleged infringing material, despite Peerless' contrary reading.  Peerless claims "the underlying complaint does not allege 'oral or written publication'; instead, the claim is that MBF infringed the Virtual Slice Technology by selling the technology to Lippincott 'and others.'"  Peerless' Motion for Summary Judgment p. 11.  Peerless loses the forest in the trees.

Under the terms of the insurance contract, coverage for personal injury extends to "injury . . . *arising out of* . . . oral or written publication of material." 2001 Insurance Policy V.14.e. The Bacus Complaint alleges just such injury.  The Bacus Complaint alleges that:  Lippincott is an international publisher; Lippincott is offering to sell a textbook it published which includes the infringing Microbrightfield-produced Virtual Pathology Slide Set ("VPSS"); and Microbrightfield, by offering to sell the VPSS to Lippincott and/or by contributing to the infringement of certain Bacus patents through these publications, caused damage to Bacus.  See, e.g., Bacus Complaint, Paragraphs 10, 11, 16, 17, and 18.  Thus, contrary to Peerless's view, the 2001 Insurance Policy does not limit coverage to "injury caused by the insured's actual oral or written publication of material."  To the contrary, the insurance policy's definition is broader, encompassing injury *arising out of* the oral or written publication of material.  As Peerless admits in the second footnote to its Motion for Summary Judgment: "The allegations against MBF were intertwined with allegations against a book publisher, Lippincott, to whom MBF sold virtual microscope technology for inclusion in textbooks." The alleged invasion of private rights arose from the Lippincott publication of an alleged infringing product sold to the public.

### c. The 2001 policy supplies coverage for claims brought by "persons", which term included a corporate entity such as Bacus.

Peerless also seeks to avoid its duty to defend Microbrightfield by comparing the definitions found in V.14.d and V.14.e of the 2001 insurance policy. Peerless argues that V.14.d applies to harm to "a person or organization", whereas V.14.e applies to "persons," and therefore Peerless believes the omission of "organization" in the latter definition irrefutably establishes Peerless's intent to deny the extension of coverage to corporations injured by a violation of the right of privacy. This argument fails for three reasons.

First, "[i]t is well-established that a corporation is a legal "person" See 1 V.S.A. 128. Webster's also defines "person" as "one (as a human being, a partnership, or a corporation) that is recognized by law as the subject of rights and duties." See Exhibit F to MBF's Motion for Summary Judgment.

Second, Peerless sold coverage to a corporation. It reasonably knew, or should have known, that Microbrightfield's business involved dealings with other companies. See e.g., Fed. Ins. Co. v. Stroh Brewing Co., 127 F.3d 563 (7th Cir. 1997):

> This duty [to defend] may be supported further by examining the parties' expectations when the policy was written and purchased. Because the term "discrimination" is not defined in the policy and because price discrimination suits such as Calumet's are common in the beer industry, it is not objectively unreasonable for Heileman to have believed that it was purchasing coverage for just such a suit as Calumet's.

Id. at 569. Moreover, as the district court in Stroh Brewing found:

> [B]y its own terms the policy does not limit personal injury coverage to injuries suffered by natural persons as opposed to business entities, that "personal injury" is defined to include several injuries regularly suffered by businesses and that the insurance policy was written for a business entity, not for an individual, and that "while it might appear to make little sense as a linguistic matter to conclude that personal injury coverage could conceivably allow recovery for an economic harm to a business, from a practical standpoint such coverage, where appropriate, should be available.

Id. at 567, n.5. Peerless no doubt reasonably understood that in the business of cutting-edge computer software, patent infringement suits would be foreseeable risks against which to insure.

Third, in Vermont, "if any claims are potentially covered by the policy, the insurer has a duty to defend. . . . Conversely, where there is no possibility that the insurer might be obligated to indemnify, there is no duty to defend." City of Burlington v. National Union Fire Ins. Co., 163 Vt. 124, 127, 655 A.2d 719, 721 (1994). Vermont favors a broad construction of words or phrases used in the grant of coverage consistent with "the purpose of [liability] insurance . . . to provide protection against liability claims . . . ." City of Burlington v. Glens Falls Ins. Co., 133 Vt. 423, 424, 340 A.2d 89, 90 (1975)(holding that policy terms must be given interpretation consistent with that purpose, with all limitations and exclusions strictly construed); see also American Fidelity Co. v. North British & Mercantile Ins. Co., Ltd., 124 Vt. 271, 273-74, 204 A.2d 110, 112-113 (1964). An insurer's duty to defend is broader than its duty to indemnify, and is triggered whenever it appears that the policy *might* cover that type of claim. City of Burlington v. National Union Fire Ins. Co., 163 Vt. 124, 127, 655 A.2d 719, 721 (1994); Garneau v. Curtis & Bedell, Inc., 158 Vt. 363, 366, 610 A.2d 132, 134 (1992). An insurer may only avoid its defense duty by demonstrating "at the outset that the claims against its policy holder are *entirely excluded* under the terms of its policy." Vermont Gas Systems v. USF&G, 805 F.Supp. 227, 231 (Vt. 1992)(emphasis added). Thus far, Peerless has asserted the inverse of its burden of proof. Peerless has argued that the terms of the contract definitions do not apply because certain terms and phrases are not explicitly included. This is not the standard; coverage exists <u>unless</u> *entirely excluded*. Peerless has not demonstrated as such, and thus summary judgment in its favor on its declaratory judgment action is not warranted. See City of Burlington, 163 VT. at 127, 655 A.2d

at 721 (1994)(the insurer must defend so long as the policy can reasonably be interpreted to provide coverage).

Fourth, to the extent that there is any difference of interpretation (and there is, given the pleadings now before this Court), it should be resolved in the favor of Microbrightfield. In construing an insurance policy, Vermont courts "read disputed terms according to their plain, ordinary, and popular meaning;" and, "[b]ecause a policy is prepared by the insurer with little effective input from the insured, [the Court] construe[s] insurance policies in favor of the insured, in accordance with the insured's reasonable expectations for coverage based on the policy language." Hardwick Recycling & Salvage v. Acadia Ins., 2004 VT 124, ¶23; 869 A.2d 82, 90 (2004) (citations omitted); see also Peerless Ins. Co. v. Wells, 154 Vt. 491, 494, 580 A.2d 485, 487 (1990). As expressed in its tender of defense to Peerless, Microbrightfield reasonably expected coverage based on the policy language, yet was denied coverage by Peerless.[3]

### d. The insurance policy's exclusions for intentional misconduct are not applicable in this case.

The 2001 insurance policy contains coverage exclusions for intentional injury; Peerless cites to two of these in its effort to deny defense coverage. 2001 Insurance Policy III.B.2.a.(1 & 2). Peerless asserts that because the complaint alleges "willful infringement," coverage cannot

---

[3] MBF's reasonable interpretation of its policy's defense coverage for patent infringement claims brought by corporations is bolstered by two recent federal circuit court decisions. See Universal Underwriters Ins. Co. v. Lou Fusz Automotive Network, Inc., 401 F.3d 876 (8th Cir. 2005)(class-action lawsuit brought by a company for invasion of privacy raised sufficient issues for insurance coverage to be extended to insured under definition of "injury" in insurance policy; "injury" included "invasion of rights of privacy," but this latter term was not defined, limited, or qualified); Hooters of Augusta, Inc. v. American Global Ins. Co., 157 Fed.Appx. 201 (11th Cir. 2005)(unpublished opinion)("we are satisfied that privacy can be reasonably read as extending beyond a particular, narrow or more technical definition of privacy and encompassing a broader layperson's notion of privacy as protected by various provisions of state or federal law").

DOWNS
RACHLIN
MARTIN PLLC

- 9 -

be extended to Microbrightfield under the terms of the policy. Having litigated numerous coverage cases in Vermont, Peerless should have known better.

In Vermont, the terms used in the complaint itself are not fully dispositive. Rather, to determine if there is coverage, this court must read the policy's definitions together with the exclusions for injuries that are inflicted knowingly or intentionally. Allstate Ins. Co. v. Vose, 869 A.2d 97 (Vt. 2004). The court must determine if the alleged *injury* that resulted from Microbrightfield's admittedly intentional act of selling to Lippincott was *injury intended* by Microbrightfield.[4] See id. In this case, Microbrightfield's intent is a question of fact, which precludes granting summary judgment on Peerless' motion. See Universal Underwriters v. Lou Fusz, 401 F.3d 876, 882 (Coverage depends on resolution of factual question of intent to cause harm.") Throughout the underlying litigation and this insurance coverage action, Microbrightfield denied the Bacus claim of willful infringement. See MBF's September 10, 2004 Answer, Affirmative Defenses, and Counterclaim to Bacus Complaint (attached as Exhibit A); see also Affidavit of Jack Glaser, President of Microbrightfield, Inc. (attached as Exhibit B). Alleged patent infringement is not the type of action, like assault, that is "so likely to result in injury that, as a matter of law, the court will find that the injury did not result from an accident regardless of the actor's subjective intent or expectations." Id.

---

[4] A similar exclusion in a non-occurrence-based policy was interpreted in Prime TV, LLC v. Travelers Ins. Co., 223 F.Supp.2d 744 (M.D.N.C. 2002). The policy excluded coverage for any privacy invasion done "with knowledge of its falsity." 223 F.Supp.2d at 752. The policyholder tendered consumer protection law claims against it arising out of the distribution of satellite television service advertising materials. The court subsequently held that because the policyholder did not have knowledge of the advertising materials' falsity the exclusion did not apply and the duty to defend was triggered. Accord Lineberry v. State Farm Fire & Cas. Co., 885 F. Supp. 1095, 1099 (M.D. Tenn. 1995) (holding that a policy providing coverage for the intentional tort of privacy invasion including an expected or intended injury exclusion was illusory and ambiguous).

  e. **The "patent infringement" exclusion found in the 2002 policy is evidence that patent infringement claims were covered under the 2001 policy.**

In the 2002 Peerless Insurance Policy sold to MBF, Peerless added the following exclusion: "This insurance does not apply to . . . 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." 2002 Peerless Insurance Policy Coverage B.2.i. The very words used in this exclusion illustrate the fact that *in the absence of* this exclusion, there does exist "personal injury" arising out of the infringement of patent. Put another way, patent infringement is a cognizable, reasonable form of personal injury which Peerless recognized. Peerless's Motion for Summary Judgment speaks of the "glaring absence" of patent infringement as an enumerated covered injury under the 2001 policy, yet, the next year, Peerless added patent infringement as an exclusion – a "glaring <u>inclusion</u>." That which is not previously included cannot then be excluded. Again, under Vermont law, insurers may only escape the duty to defend by showing "at the outset that the claims against its policy holder are *entirely excluded* under the terms of its policy." <u>Vermont Gas Systems v. USF&G</u>, 805 F.Supp. 227, 231 (Vt. 1992)(emphasis added). Peerless cannot sustain its legal burden here.

## C. Conclusion

For all the foregoing reasons, Peerless' motion for summary judgment on its declaratory judgment counterclaim should be denied.

Brattleboro, Vermont
March 10, 2006

DOWNS RACHLIN MARTIN PLLC

By _____
R. Bradford Fawley
80 Linden Street
P.O. Box 9
Brattleboro, VT 05302-0009
Telephone: (802) 258-3070
Facsimile: (802) 258-2286

ATTORNEYS FOR MBF
MICROBRIGHTFIELD, INC.

BRT.60677.1

UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| MICROBRIGHTFIELD, INC., )<br>   Plaintiff, )<br> )<br>v. )<br> )<br>PEERLESS INSURANCE COMPANY, )<br>   Defendant. ) | Docket No. 2:05-CV-207 |

### CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March 2006, Plaintiff MicroBrightField, Inc., by and through its attorneys, Downs Rachlin Martin PLLC, served its Opposition to Peerless's Motion for Summary Judgment by first class mail, postage prepaid, to Richard Windish, Esq., 45 Pleasant Street, Woodstock, Vermont 05091.

Brattleboro, Vermont
March 10, 2006

DOWNS RACHLIN MARTIN PLLC

By _____
R. Bradford Fawley
80 Linden Street
P.O. Box 9
Brattleboro, VT 05302-0009
Telephone: (802) 258-3070
Facsimile: (802) 258-2286

ATTORNEYS FOR PLAINTIFF
MICROBRIGHTFIELD, INC.

BRT.58477.8

